May it please the Court, Counsel. My name is Eric Rau. I'm an Assistant Federal Public Defender, and I am the attorney for the appellant Antonio Eretza-Flores. With the Court's permission, I will reserve two minutes for rebuttal. This is the case in which Mr. Eretza-Flores threw rocks at a Border Patrol helicopter, trying to scare the pilot away. He pled guilty, and at sentencing, the government sought to contradict the factual basis for the guilty plea in order to obtain a sentencing enhancement. In our brief, we argued two issues. First, that the Court had applied the wrong sentencing guideline. And second, that the Court had failed to apply the proper evidentiary standard of clear and convincing evidence to the facts it used to enhance Mr. Eretza-Flores' sentence. My argument today will focus on subsets of the first issue regarding the proper application of the sentencing guideline. Basically, what type of assault this was, what the differences between an element of an offense and a mere sentencing enhancement, and which guideline should apply when a dangerous weapon, such as a rock, is used merely to frighten without the intent to cause injury or the intent to commit another felony. The argument that the lower guideline, 2A2.4, should apply in this case and in such cases, begins and ends with the factual basis for this case. Mr. Eretza-Flores pled guilty using a specific written factual basis that was accepted by the Court without objection from the government. The factual basis... Mr. Didn't the, if I could intrude, at the time of the plea hearing, didn't the government say that it reserved the right to argue intention at the time of the sentencing? Yes, Your Honor. The government reserved its right to present additional evidence regarding state of mind at sentencing, and that's a direct quote. So if the government wasn't challenging the notion that this was done without intention to harm, what was the purpose of that remark? Your Honor, the remark had two purposes, or there are two permissible purposes for that, which was why we, the defense, did not object to the government's request to reserve that right. First, with respect to where within a specific appropriate guideline range Mr. Eretza-Flores might fall, a mitigated term, a middle term, or an aggravated term within the sentence, the government was free to present additional evidence regarding the state of mind. More importantly, the government was free to present evidence that there was intent to commit another felony. There are two parts of the sentencing guideline for aggravated assault that the government argues are applicable here. The first is that a deadly weapon is used with the intent to injure. The second is that the deadly weapon is used with the intent to commit another felony. The factual basis for Mr. Eretza-Flores' plea clearly established that he did not have the intent to injure, that he only had the intent to threaten or to frighten the pilot of the helicopter. This was an element of the offense. The factual basis did not set forth any information about the intent to commit another felony, because the intent to commit another felony is a sentencing enhancement. It is not an element of the offense and was not properly part of a factual basis for a guilty plea. The government was free at sentencing to argue that Mr. Eretza-Flores had the intent to commit another felony, and the government indeed did so. The government had that opportunity and took that opportunity to present evidence regarding additional felonies. The second part of my argument deals with the appropriateness of the Court's finding and the application of law that the Court made. The government was free to put forth additional evidence. It reserved its right to present additional evidence regarding state of mind. It did present additional evidence regarding state of mind with respect to the allegations that Mr. Eretza-Flores had committed illegal reentry after deportation, and also the government alleged that he was involved in alien smuggling. The district court, based on the proof that the government put forth at sentencing, stated, quote, For the record, the evidence does suggest by a preponderance of the evidence, if not more, that he, Mr. Eretza-Flores, was involved in alien smuggling activity also. I considered that, too. And that's taken from page 121 of the excerpt of the record. The Court added, He also committed a felony of being here illegally in the first place. So both felonies were taken into account by the Court. And that's at page 122 of the excerpt of the record. Mr. Eretza-Flores, by the government's own admission in its answering brief, was attempting to avoid responsibility for both of the underlying felony offenses. The government reserved its right to present additional evidence. The government presented additional evidence. But what the government presented evidence of was felonies that were already completed. And the district court's finding was that felonies were already completed. The error that the Court made, the error of law, was in then believing that those completed felonies supported the application of the higher sentencing guideline. They did not. These were completed offenses. Assuming that the Court's fact-finding was correct, its legal analysis was that he had committed these other offenses, I considered that. Therefore, I'm applying the higher sentencing guideline. The law required that if he threw the rocks with the intent to commit another felony, not already having completed felonies, then the Court could apply the higher guideline. But again ---- Roberts, I want to talk for a moment, since we're running out of time here. There obviously is a disproportionate impact in this sentence between the two schemes. But the cases that you cite, Dare and Statton, deal with sentencing enhancements, not the base-level offenses. Do you agree with that? Yes, Your Honor. Specifically, Statton did deal with an enhancement within a particular guideline. In that case, I believe it was a substantial risk of death from the manufacture of meth. However, our position is that these facts are analogous to those in Dare and in Statton, in that anything that's used to enhance a sentence, whether it's going from Guideline 282.4 up to 282.2, or whether it's going within a guideline that has such an incredibly disproportionate effect on the sentence, requires proof by clear and convincing evidence. And in this case, as we noted in our briefs, the difference in sentencing would have been, I believe, from a two-to-eight-month range under 282.4 to a 37-to-46-month range. I gather that there is no Ninth Circuit law that agrees with your recommendation, is there? Your Honor, as to which? To increase the level of proof to preponderance of the evidence. To clear and convincing evidence? I'm sorry. Excuse me. Clear and convincing evidence. Excuse me. Your Honor, there is no case that is specifically on point with respect from one sentencing guideline to another. However, we do rely on the Statton case. The reasoning of the Statton case, I believe, is applicable. Your Honor, having answered the question, may I go ahead and reserve my remaining time for rebuttal? Thank you. Yes, please, sir. May it please the Court. Brad Giles, appearing on behalf of the United States, the appellee in this matter. The District Court did not err, much less commit clear error, when it properly held the defendant accountable for committing an aggravated assault when he threw four rocks at a United States Border Patrol helicopter that was engaged in his pursuit. The first of these rocks passing directly through the main rotor blades. Counsel, I want to talk about that for a minute. I'm looking at the record here on page 42, lines 18 through 20. The pilot says, so my altitude was basically varied from it went up as high as probably 500 feet to as low as probably 200 feet. I don't know how good this guy was with rocks, but that's a long way. Is the government seriously contending that rocks went up through the rotor blade? We are, Your Honor. And I would point the Court to the excerpts of record at page 79. I think one of the things that's not understood in this case is the pilot's talking about flying over very rough terrain. On excerpts of record, page 79, he states at one point that he was 300 feet above the base of a ditch, an arroyo. And the defendant was charging up a hill towards the helicopter. So taking a strict Pythagorean theorem basis, as the defendant does, is not really the facts here. The pilot testified at that point it was over a ditch. It's very hard to tell. But you're still talking about at least the length of a football field or longer. Well, Your Honor, the district court did hear testimony from Agent Starnes, and there has been no showing before this Court that that testimony that the district court relied on was clearly erroneous, and the Court found that to be true. Well, I guess that's really the issue, isn't it? Is it clearly erroneous to believe that somebody is so good that they can throw a rock 500 feet and pass through a rotor blade? I find that difficult to believe. Your Honor, at sentencing, the government did present a videotape of the actual terrain at issue, and we had the pilot go over it. I'm not talking about terrain. I'm talking about the distance that the rock had to go. Your Honor, we don't know what that distance was. The guy testified what the distance was. He testified that if he had fallen straight down, it would have been about a 300-foot fall. On excerpts of record, page 79. That's a football field in length. Correct. But he also testified that the defendant was coming up a hill that was at a 45-degree angle from the helicopter. So he's not necessarily that far of a distance away when we talk about the length of travel on the rock. Additionally you're saying that you think that because the agent flying the helicopter so testified and because there was no testimony to the contrary other than the intent that we are bound by what the agent said? Your Honor, I think it's a clear – your court's obviously not bound by it, but it is a clear air review. And the government, recognizing that this was an issue, did provide to the district court additional evidence specifically in the form of a videotape to demonstrate how this was possible and to augment the testimony of the pilot. And the district court obviously found that probative in this case. Would you believe that a guy could throw a rock into the air, a football field in length? Your Honor, I believe that if he was standing at the top of a hill and a helicopter was 300 foot over the ground over an undetermined – We're still talking about a football field in length of distance. What the agent's testimony is, if I understand it, is that from the point on the hill where he threw it to the rotor blade, it was anywhere from 200 to 500 feet. Your Honor, that was the testimony of the agent. And from going out with the agent and taking this videotape, we did show the court evidence to support that. In any case, I don't – Isn't it more likely that he was, in fact, trying to scare him rather than to physically harm him? Your Honor, I don't – You wanted him to stay away from where he was, but he wasn't trying to bring him down because it wasn't realistic that he could have thrown it that far. The defendant's other actions on this date, in addition to throwing the rock, show that that clearly was not his intent. When the defendant threw these rocks, he threw four of these rocks. He charged up the hill towards the helicopter when he threw the rocks. When he was finally apprehended by the apprehending agents, he continued to struggle with them to resist arrest. After they took him into custody, he continued to try – That's not why you're charging him. It's because of the rocks used as a weapon. We've got to separate these things, do we not? Not necessarily, Your Honor. That is evidence of his intent, and the district court properly found that that was a window, using the court's words, into the defendant's intent at the time of this assault. He was doing everything from threatening the ground agents, don't let me see your face, don't let me see your family's faces, and throwing racial slurs at these ground agents. And based on the totality of what's going on here, his intent to cause harm to these agents is abundantly clear on this record. We even got into that, sir, though. Are you not bound by what happened at the plea hearing, where this gentleman gets up and specifically pleads guilty to this offense without an intent to harm? So shouldn't we not have even been taking this subject up? Your Honor, I don't think that's correct at all, especially in this case where the government made a clear record and indeed defense counsel expressly acknowledged that the government had the right to present additional evidence with regard to intent. This was the agreement here. The change of plea actually occurred before the district court, which ultimately pronounced sentence. And that district court, based on the record as it existed, didn't find anything wrong with the government presenting additional evidence of intent. But now government defends it. So isn't that a mistake? Not at all, Your Honor. The government accepted that factual basis with the provision that it would have the right to present evidence of intent at the time of the sentencing. State of mind. And your colleague suggests that there were other issues with respect to state of mind that you were reserving, but that with respect to this one, you were foreclosed. Well, Your Honor, if we look directly at the evidentiary record in this case from the change of plea proceeding, the court questioned defense counsel. It's my understanding that neither side is precluded from doing this at sentencing, and defense counsel acknowledged that. So if they truly felt that that was the case, they had the right to make that statement, and the government had the right to decide whether or not to accept this plea. But that was not done. The government accepted the factual basis based on that provision. In any case, there's certainly sufficient evidence to apply the aggravated assault enhancement for two other independent reasons, and that's the defendant's intent to commit this assault with the intent to commit another felony, both the 1324 alien smuggling violation and the 1326 illegal reentry violation, which he has been found guilty of, proven beyond a reasonable doubt based upon his own guilty plea. It's clear that he committed this assault with the intent to continue his illegal reentry into the country. He led it, pursuing agents on a 45-minute foot pursuit through the desert with his helicopter assisting, and at the end of it, that's when he threw the rocks up into the rotor blades. That offense isn't complete just when he reenters? The offense keeps going on? Absolutely, Your Honor. It's a continuing offense. If I can make a point relating to that. We have that issue pending in an en banc court right now as to when the offense is complete. Yeah. So we may have to hold up on our decision until that en banc opinion issues. And, Your Honor, for the purposes of this case, I would refer this court to the two cases cited in the government's brief, Ramos-Gedinas and Hernandez-Herrera, which both indicate that the found in offense is a continuing offense. Additionally, the court also heard testimony regarding the defendant's commission of the alien smuggling violation, and the court found it probative that the defendant was not only drinking a beer in the truck, which is certainly not indicative of someone who has just been smuggled across the desert, but also had a flashlight. And there was testimony about his use of the cell phone, which certainly is indicative of someone who is acting as an alien smuggler and not simply as a person who has arrived in the United States. And the testimony of Agent Taylor guides carry flashlights. The defendant's argument that the government is precluded from proving this as an element of the offense is also contrary to case law. In the case of United States v. Jim and United States v. Sanchez, this court has very clearly held that assault is a general intent crime and intent to cause injury is not an element of the offense. Based upon the foregoing reasons, the United States would ask this court to affirm the district court's sentence for three independently justifiable reasons. First, the defendant clearly showed that he had the intent to cause harm to Agent Starnes when he used a dangerous weapon against him. Second, the defendant committed the assault and furtherance of the alien smuggling violation with the intent to commit that violation. And finally, the defendant committed the assault with the intent to further his own illegal reentry into the country. Can you say alien smuggling violation? Is that the bringing to the U.S. or is it a different statute? It would be the 1324 statute, Your Honor, I believe it's Title 21 U.S.C. 1324, which he had previously been charged under. Thank you. Mr. Giles, having concluded, now we still have Mr. Rao again. Thank you. Your Honor, the first issue I would like to address is the plea colloquy. The government has stated that the agreement was that the government could present any evidence and that the defendant had no objection to its reservation of right. This was not the agreement that the government could present evidence that contradicted the factual basis. The defense did not object because it was perfectly permissible legally for the government to present additional evidence regarding state of mind at the time of sentencing to deal with issues that were not covered in the factual basis. The government was entitled to present additional evidence. The government was prohibited from contradicting the factual basis. This was a mistake by the district court. The district court accepted the factual basis. Once that factual basis was accepted, in effect, it became collateral estoppel on the district court judge to then find facts that contradicted this. Under Morrison and under Gao, the defendant would have been prohibited from contradicting the factual basis for his plea. Due process, the Rule 11 colloquy, voluntariness of plea agreements or guilty pleas all would require that the court be bound by the factual basis that it had accepted. The government also, with respect to the general intent versus specificity and that the government can't show intent to do bodily harm because that's inconsistent. Can they still sustain this enhancement by saying it was with the intent to do another felony? Yes, Your Honor. But they did not do so in this case. The evidence that the government did present, which was permitted, did not support the court's legal conclusion. The court's factual findings, based on the evidence that the government presented, were erroneous because these were completed offenses. The government has cited the United States v. Jim for the fact that an assault on a Federal agent is a general intent crime. But Jim's general intent only relates to the identity of the officer. FIOLA requires an intent to assault, and the type of assault that was intended here was to threaten or to frighten. Your Honors, I see I'm just out of time. May I, if I may, briefly? Maybe a little more at least to answer a question anyone may have. The question I have is, you know, I think at the Enbank case where we have this continuing violation issue pending is Lopez. But I don't know if it's the same statute. I guess it's the one that deals with a conviction for bringing an alien to the U.S. and whether that can get activities on this side of the border. And in this case, if he was still involved with the aliens and one assumes he was part of the management of that operation, would that sustain the enhancement? Assuming that the Lopez case says the offense continues post-border until some point. Your Honor, assuming hypothetically that it would, factually this case is distinguishable for the fact that Mr. Eretz Eflores was a passenger in the vehicle with the other immigrants. The driver of the vehicle was an entirely different person. When the vehicle was brought to a stop after the police chase, the driver fled into the darkness of the desert. All of the other undocumented immigrants fled. Mr. Eretz Eflores ran into the desert where he was pursued by the agents. He was in no position to round up those other immigrants again, to put them back into a vehicle or in any way engage in an offense. His connection with the others had ended at the point at which he fled into the darkness. Even if it's found legally to be a continuing offense, if the person is still in contact with them or is still holding them or driving them or having some sort of relationship with them, he did not. He was alone, fleeing in the desert. Your Honors, I believe I'm out of time. And I have one other question here, counsel. From Mr. Eretz Eflores' perspective, if this Court found that the district court had committed clear error, even following a preponderance of the evidence standard with respect to the second felony, where does that leave the sentence of your client from your perspective? His sentence should have been given clear error with respect to the sentence. The lower guideline of 282.4 should apply under his criminal history category of 2 because of a previous illegal entry conviction. Mr. Eretz Eflores would be within a range of 2 to 8 months. At the time of sentencing, he had some 20 months, almost 21 months in custody, so our argument was for time served in a sentence of 2 to 8 months, which is what we are seeking from this Court now, to reverse the sentence of 38 months that Mr. Eretz Eflores received. Thank you. Thank you. Okay. We thank both counsel for their arguments, and Eretz Eflores shall be submitted.
judges: Gould, Smith, Covello